PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

GALEN A. PHILLIPS (CABN 307644)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7110
    Email:  Galen.Phillips@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) CASE NO. CR 23-00270-TLT |
|---|---|
| Plaintiff, | ) |
| v. | ) UNITED STATES' SENTENCING MEMORANDUM |
| JAY YOON SONG, | ) |
| Defendant. | ) |

## I. INTRODUCTION

The defendant Jay Song is scheduled to be sentenced on April 25, 2025. He entered a guilty plea to Count One of the Superseding Information pursuant to a Plea Agreement on November 17, 2023. Dkt. 47 & 48. Count One is a money laundering charge related to the proceeds of a mail fraud scheme in which the defendant Song participated. *See* Dkt. 42 (Superseding Information).

For the reasons set forth below, the United States requests that the Court sentence the defendant Song to a time-served custodial sentence and impose a three-year term of supervised release with the conditions recommended by the Probation Office in the PSR, including 100 hours of community service. In addition to being ordered to pay the $100 special assessment, Song should be ordered to pay

restitution to Mercury Insurance Corporation ("Mercury") in the amount of $44,475.76. In light of its request for restitution, the government does not recommend that the Court impose a fine.

## II.    OFFENSE CONDUCT

The defendant Song and his co-conspirator Kirill Afanasyev participated in a scheme to defraud Mercury with respect to an insurance claim submitted to Mercury regarding a BMW 430i (the "BMW"). That fraudulent insurance claim was one in a long series of similar schemes orchestrated by Afanasyev in which numerous individuals submitted fraudulent automobile insurance claims.[1] Indeed, prior to engaging in the criminal conduct in this case, Song himself was introduced to Afanasyev's fraud scheme through his participation in a scheme to defraud Mercury concerning a wrecked 2017 Cadillac XTS (the "Cadillac") titled in Song's name and insured by Song. *See* PSR, ¶ 10.

Afanasyev purchased the BMW through an auction house named Manheim in April 2018. At the time, the BMW had suffered heavy front-end damage, it was undriveable, and it had a non-functioning engine. Photographs of the BMW as it then appeared are set out below:




---

[1] As detailed in the PSR, this case is related to six other cases before this Court involving ten other defendants (two of whom were charged in two cases each). *See* PSR, at 2 (listing the following as related cases *U.S. v. Afanasyev, Loggins, & Sarser*, No. 3:23-CR-00042-TLT/WHO; *U.S. v. Jackson*, No. 3:23-CR-00236-TLT; *U.S. v. Kravchenko*, 3:24-CR-00049-TLT; *U.S. v. Badillo and Najarro*, 3:24-CR-00382-TLT; *U.S. v. Afanasyev, Badillo, Naraja, & Respicio*, 3:24-CR-00471-TLT; *U.S. v. Meleshinsky*, No. 3:24-CR-00483-TLT).

1  The BMW's condition would not have been apparent to an insurer because its true condition was not
2  listed in databases such as Carfax[2] and because the title in place at the DMV was a normal title in the
3  name of the BMW's prior owner (rather than a "salvage title" or "salvage certificate"[3]).
4     Records from Mercury show that the defendant Song obtained an insurance policy for the BMW
5  on May 15, 2018. Song paid premiums on the policy out of his bank account from May until October
6  2018.
7     On July 16, 2018 (that is, two months after Song obtained insurance from Mercury), DMV
8  records memorialize Song's "purchase" of the BMW, allegedly for $14,500. In truth, Song did not pay
9  any money for the purchase of the car.
10    On August 31, 2018, an insurance claim was filed with Mercury, in which it was claimed that
11 Song had been in a single-car accident in the BMW in which he was at fault. In adjudicating the claim, a
12 Mercury adjuster examined the vehicle and took photographs of it. Photographs provided to the
13 government by Mercury show that the car was in essentially the same condition as when Afanasyev
14 obtained it from Manheim.

 

21    On September 11, 2018, Mercury issued a check to Song for $47,147.51. On September 17,
22 2018, the defendant Song deposited that check into his Bank of America account. PSR, ¶ 7. Then, on
23 October 11, 2018, Song made a cash withdrawal of $30,101.79. *Id.*, ¶ 8. The funds in that withdrawal

---

[2] Carfax provides data on automobiles to individuals and businesses, typically through a Carfax Vehicle History Report. Such reports "provide information about the number of owners a used car has had, accidents it has been in, title issues, whether it was a fleet vehicle, and its maintenance record, among other aspects of its history." https://en.wikipedia.org/wiki/Carfax_(company)

[3] A salvage certificate is issued by the DMV (instead of an ownership certificate) when a car is declared a total loss and a party seeks a salvage certificate from the DMV. *See* https://www.dmv.ca.gov/portal/handbook/vehicle-industry-registration-procedures-manual-2/salvage-nonrepairable-junk-vehicles/salvage-certificate/

consisted in large part of the ill-gotten gains obtained from Mercury, providing the basis for the count to which the defendant Song has pleaded guilty.

Based on the total amount of money paid out by Mercury (as in, the claim payment, rental car fees, towing and storage fees), offset by amounts such as the money Mercury received for sale of the BMW ($4,900), Mercury suffered a net loss of $44,475.76 from the scheme to defraud involving the BMW. *See* PSR, ¶ 11. The Court should use this amount to calculate the restitution owed to Mercury.

This fraud scheme, like many of the schemes charged in the related cases, was not identified by the defrauded insurance company but only came to light through the FBI's and IRS-CI's investigation.

## III.  GUIDELINES CALCULATION

The Parties are in agreement about the Guidelines Calculation. The applicable provision for the money laundering offense is U.S.S.G. § 2S1.1, which cross references U.S.S.G. § 2B1.1 in determining the base offense level, which provides for a base offense level of 6. *See* §§ 2S1.1(a)(1) and 2B1.1(a)(2). Based on the net loss to Mercury resulting from the schemes to defraud involving the BMW and the Cadillac (which is included as relevant conduct), the offense level should be increased by six levels. *See* § 2B1.1(b)(1)(D). The adjusted offense level of 12 from Section 2B1.1 should then be used to calculate the base offense level in U.S.S.G. § 2S1.1(a)(1). Because the money laundering conviction is under 18 U.S.C. § 1957, one additional point is added, for a total offense level of 13. U.S.S.G. § 2S1.1(b)(2). Two points are subtracted for acceptance of responsibility and an additional two points are subtracted because the defendant is a "zero-point" offender. Accordingly, the final offense level is level 9 (PSR, ¶ 9), and the advisory Guidelines range is four to 10 months (Zone B).

## IV.  SENTENCING RECOMMENDATION

The overarching goal of a sentencing court is to impose a sentence that is sufficient to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment." *United States v. Ressam*, 679 F.3d 1069, 1088-89 (9th Cir. 2012) (en banc) (quotation omitted); 18 U.S.C. § 3553(a)(2).  The Court should begin the sentencing process by correctly calculating the applicable Guidelines range and must "remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6

(2007).  The Court should then consider the factors outlined in 18 U.S.C. § 3553(a) to determine the appropriate sentence.  *Ressam*, 679 F.3d at 1089.  If the Court determines that a sentence outside of the Guidelines range is warranted, it must ensure that the ''justification is sufficiently compelling to support the degree of the variance." *Id.* (quotation omitted).  "[A] major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50.

The factors the Court should consider in determining the appropriate sentence include:

- The nature and circumstances of the offense, and the history and characteristics of the defendant;
- The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant;
- The kinds of sentence and the sentencing range established in the Guidelines;
- Any pertinent policy statement by the Sentencing Commission;
- The need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and
- The need to provide restitution to any victims.

18 U.S.C. § 3553(a).

Based on a consideration of these factors, the United States submits that a time-served sentence is sufficient, but not greater than necessary, to comply with the factors set out above.

As an initial matter, the fraud scheme in this case was serious and part of a larger scheme that involved numerous other fraudulent claims and claimants. The overall fraud scheme conceived of and orchestrated by the co-defendant Afanasyev generally escaped detection by the insurance companies who were its victims. Accordingly, that scheme was able to continue for years. Although the defendant played a small part in the overall scheme, his actions served to advance the scheme and resulted in losses to Mercury of more than $76,000. *Cf.* PSR, ¶¶ 8, 10.

Second, the scheme regarding the BMW to which the defendant Song has pleaded guilty was not his initial exposure to the fraud scheme. As set forth in the PSR, Song also participated in another scheme to defraud orchestrated by Afanasyev related to a 2017 Cadillac XTS. *See* PSR, ¶ 10.

Third, despite the serious nature of the conduct and Song's knowing participation in the fraud, he accepted responsibility relatively early on for his conduct, did not file any pretrial motions, raised good

questions (through counsel) about the strength of some of the government's allegations, and is now in agreement with the United States regarding the accurate calculation of the Guidelines. He is gainfully employed and is in a stable relationship. As reflected by the fact that the defendant is a zero-point offender, this is his first conviction. For these reasons and for the reasons reflected in the "Offender Characteristics" section of the PSR, the government hopes that the fact of this prosecution will deter him from engaging in similar conduct in the future, without the need to impose additional custody time.

Finally, although the government generally believes that imposing prison sentences in "white collar" cases promotes respect for the law and provides for general deterrence, the other factors in this case (including the defendant's minor role in the overall scheme, his early acceptance of responsibility, and his background and characteristics) warrant a time-served sentence.

The Probation Officer has recommended 100 hours of community service. The government believes that this is an appropriate condition that will benefit both the defendant and the community. Accordingly, the government joins in the recommendation that the defendant perform 100 hours of community service.

## V. RESTITUTION

The government has calculated Mercury's pecuniary loss resulting from the scheme to defraud involving the BMW to be $44,475.76. The PSR recommends that the Court use this amount in its restitution order. PSR, ¶ 12. The government joins in that recommendation.

Although the cases against Song's main coconspirator, Kirill Afanasyev, have not yet been adjudicated, the government believes that it is likely that Afanasyev *also* will be ordered to pay restitution to Mercury. In order to assist the Clerk in collection and distribution of funds obtained from Song and Afanasyev, the Court should note in the table on the "Criminal Monetary Penalties" page of Song's Judgment that Mercury's "Total Loss" (Column 2) is $44,475.76, and that the "Restitution Ordered" (Column 3) for Song is the same amount. *See* https://www.uscourts.gov/sites/default/files/ao245b.pdf (AO Judgment form). The Court may also wish to note on this page that Song's obligation is joint and several with any other coconspirators yet to be convicted (namely, Afanasyev). *Cf. United States v. Wall*, 349 F.3d 18, 26 (1st Cir. 2003) ("A judgment that specified joint and several liability, up to the maximum amount of the loss, would have eliminated

appellant's uncertainty (and basis for appeal) and provided guidance to those administering the various related restitution orders. An explicit notation would serve as notice that appellant's obligation may be discharged in part by others' payments, information that might prevent excessive recovery.") (citing *United States v. Scott*, 270 F.3d 30 (1st Cir. 2001).

In the event (perhaps unlikely) that the full amount of Mercury's loss could be collected from both Song and Afanasyev, notations on the Judgment such as those suggested above will prevent Mercury from receiving more than its total losses. *See United States v. Nucci*, 364 F.3d 419, 424 (2d Cir. 2004) ("[T]here is no legal basis to permit an award that allows a victim to recover more than his due").

## VI. Victim Issues

Mercury has been notified of the pending sentencing but has not submitted a victim impact statement. The government will advise the Court in advance of the sentencing hearing if it learns that any Mercury representative will attend the hearing or wishes to address the Court.

## VII. Conclusion

For the reasons set forth above, the United States respectfully requests that the Court sentence the defendant Jay Song to a time-served sentence and order that he serve a three-year term of supervised release, with all of the conditions recommended by the Probation Office in the PSR (including 100 hours of community service). The Court should order Song to pay restitution as set forth above, as well as a $100 special assessment.

DATED:  April 18, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

/s/
GALEN A. PHILLIPS
Assistant United States Attorney